PEOPLE ex rel. MOYNIHAN v. GREENE, Police Com'r.

(Supreme Court, Appellate Division, First Department. May 6, 1904.)

1. MUNICIPAL CORPORATIONS—POLICEMAN—REMOVAL.
   Where relator, a police captain, with knowledge that the police commissioner had detailed a member of the police force for duty at a recreation pier, withdrew him without the commissioner's permission, and detailed such officer to perform work other than police duty about the station house, in violation of Police Rule 5, subd. "u," and, though required by rule 5, subd. "a," to see that his sergeant made entries in the station blotter of all the duties performed by the various officers attached to the precinct to which he was assigned, no entry was made as to the duties performed by the relieved officer about the station house, relator was guilty of a willful and flagrant neglect of duty, and not merely of a technical violation of the rules of the department.

2. SAME—DISCHARGE.
   Under Greater New York Charter (Laws 1901, p. 129, c. 466, § 302), providing that on conviction by a police commissioner of any member of the force for neglect of duty, violation of the rules, etc., the commissioner may punish the offender by dismissal from the force, where a police captain was properly convicted of willful neglect of duty, a contention that a judgment of dismissal imposed excessive punishment was not subject to review by the courts.

3. SAME—SPECIFICATIONS—ISSUES—EVIDENCE.
   Where charges against a police captain contained a specification to the effect that he had assigned a patrolman to do other than police duty, and the accused made no application to have the specification made more specific, it was sufficient to justify proof that he had detailed such patrolman to do certain work for accused on houses owned by him.
   Laughlin, J., dissenting.

Certiorari by the people, on the relation of Daniel C. Moynihan, against Francis V. Greene, as police commissioner of the city of New York, to review relator's discharge from the police force. Writ dismissed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

William M. K. Olcott, for appellant.
Terence Farley, for respondent.

McLAUGHLIN, J. The relator, a police captain assigned to duty in the Twenty-Ninth Precinct in the city of New York, was on the 10th of September, 1902, charged by an inspector of police with neglect of duty and violation of the rules of the police department. The specifications of the charges were three in number, and were, in substance: (1) That the relator, notwithstanding he had knowledge that the police commissioner had detailed a member of the police force—one Beck—for duty at the recreation pier at the foot of East 112th street, nevertheless withdrew him, without permission of the police commissioner, on certain days specified; (2) that in violation of rule 5, subd. "u," the relator assigned Beck, after he had withdrawn him from the pier, to make repairs about the station house and do "work other than police duty"; and (3) that he did not carefully examine the books and records required to be kept in the station house of the precinct over which he had charge, and see that entries were properly made therein, as he was required to do by rule 5, subd. "a," and that on certain days specified no record whatever was made in the book as to the whereabouts of Beck after he was withdrawn from the pier. Copies of the charges and specifications were served upon the relator, and thereafter, at a trial had before the police commissioner, he was found guilty, and dismissed from the force. He thereupon obtained a writ of certiorari for the purpose of having the proceedings which resulted in his dismissal reviewed by this court.

I think the relator was properly dismissed. In fact, I do not understand that it is seriously questioned but what he was guilty of the charges specified, and it could not well be, in view of the facts appearing in the record. It is claimed, however, that the acts of the relator constituted but technical violations of the rules, for which reason the punishment inflicted was too severe, and that the relator was prejudiced upon the trial by the admission of evidence not covered by the specifications.

1. The facts proved the relator guilty of something more than a technical violation of the rules, as a most casual examination of this record will show. He knew that Beck had been detailed by the police commissioner to perform duty at the recreation pier, and that he had no right to detail him to do other service, except with the permission of the commissioner. He not only disregarded the order of the commissioner in detailing Beck, but, in effect, countermanded that order. When an inferior officer knowingly disregards and sets at naught the order of his superior, his conduct constitutes something more than a technical violation, and well deserves—if discipline is to be maintained in the department—severe punishment. He not only disregarded the order of the commissioner, but also knowingly violated rule 5u, in detailing Beck, after he had withdrawn him from the pier, to do certain repairs in the station house. This rule provides that "no officer or patrolman, other than a doorman, shall be detailed or assigned to perform any repairs or mechanical work of any kind or description in or about a station house. * * *" Beck was not a

doorman, and therefore the relator had no right to detail him to do work in the station house. The fact that he did work there for several days by direction of the relator is not disputed, nor is any satisfactory excuse offered by the relator for his act in thus violating this rule. It is the duty of the desk sergeant to enter in the station house blotter entries of all the duties of the various officers attached to the precinct to which he is assigned. No entries were made in the station house blotter as to Officer Beck after he had been withdrawn from the pier and while he was detailed to do work in the station house. The relator testified it was the duty of the sergeant to make the entries. "It was their duty to do it on the blotter. It is their duty to make these entries without my direction. The rules specifically call for it." See Rule 6, par. "b." But rule 5a provides that "captains shall carefully examine daily all books of record required to be kept in their respective station houses in conformity to the rules of the department, and see that the entries are properly made." This rule the relator also violated. He discovered, according to his own testimony, on August 15th—several days after Beck had been withdrawn from the pier and been at work in the station house—that no entries had been made in the blotter as to what he was doing, nor were any entries made in it from that time until the 2d of September following. It was his duty to see that these entries were made, and he cannot shield himself behind an assertion that he told a sergeant to make them. The rules made it the duty of the sergeant to make the entries, and they also made it the relator's duty to see that the entries were made. A failure in this respect was not a technical violation of a rule of the department, but a willful and flagrant neglect of duty, and nothing else. It is entirely immaterial whether this was the result of carelessness or from some sinister motive. We have, therefore, a case in which a police officer has not only failed to do his duty, but has knowingly violated the rules of the department, and, having been found guilty of such offenses after a trial duly had and fairly conducted, the commissioner had the power to dismiss him from the force. Under section 300 of the Revised Charter (Laws 1902, p. 127, c. 466) the police commissioner is authorized and empowered to make, adopt, and enforce rules, orders, and regulations for the government, discipline, administration, and disposition of the police department and police force and the members thereof, and by section 302 (page 129) he is specifically authorized, upon a conviction by him of any member of the force of "neglect of duty, violation of rules, * * * to punish the offender by [among other things] dismissal from the force." The guilt of the relator having been established, what punishment should be inflicted rested entirely with the commissioner, and his act in this respect is not subject to review in this court. People ex rel. McAleer v. French, 119 N. Y. 502, 23 N. E. 1061; People ex rel. Eagan v. York, 53 App. Div. 336, 65 N. Y. Supp. 696.

2. But it is said that the relator was prejudiced upon the trial by the erroneous admission of certain testimony. During the course of the trial testimony was offered to the effect that the relator detailed Beck to do certain work for him upon some houses which he owned. The fact that Beck did certain work on such houses is not denied,

though the relator did deny that he told him to do it. I think the specifications were broad enough to admit proof of this character. The charge fairly apprised the relator of what was claimed, and the specifications informed him in a general way of the nature of his alleged wrongful acts. If the specification that he had assigned Beck to do "other than police duty" was so indefinite that he did not fully understand what was meant, and for that reason could not properly defend himself without further information, he should have applied, either prior to or at the trial, for a more specific statement. He made no such application, and therefore must be deemed to have waived his right thereto. People ex rel. Powley v. Roosevelt, 23 App. Div. 578, 48 N. Y. Supp. 859; People ex rel. Carney v. Scannell, 80 App. Div. 320, 80 N. Y. Supp. 685.

Exceptions were also taken to the admission of other testimony, but an examination of them fails to disclose any error in respect to them.

It follows that the writ should be dismissed, and proceedings affirmed, with $50 costs and disbursements.

VAN BRUNT, P. J., and PATTERSON and INGRAHAM, JJ., concur.

LAUGHLIN, J. (dissenting). I dissent upon the ground that the charges and specifications of the charges were insufficient to embrace the assignment of Beck to perform private work on the relator's premises, and that the reception of the evidence on that point was prejudicial error; for, in my opinion, it is utterly improbable that the relator would have been convicted and discharged but for this evidence, which was not within the issues.